GREGOR v. HYDE.

(Circuit Court of Appeals, Eighth Circuit.   May 21, 1894.)

No. 338.

DURESS—THREATS OF CRIMINAL PROSECUTION—CANCELLATION OF DEED.
   Comp. Laws Dak. §§ 3504, 3505, define "duress of the person" as "unlawful" confinement, or confinement "lawful in form, but fraudulently obtained, or fraudulently made, unjustly harassing or oppressive," and declare a threat of such duress to be "menace," and authorize (section 3589) rescission of a contract by a party whose consent was "obtained through duress or menace." *Held,* that a threat of lawful arrest of a person justly amenable to criminal prosecution is not ground for cancellation of a deed, though it was executed under pressure of such threat; there being no circumstances of oppression or fraud, and no objection made for nearly three years.

Appeal from the Circuit Court of the United States for the District of South Dakota.

This was a suit by John Gregor against S. Y. Hyde for cancellation of a deed.   The bill was dismissed.   Complainant appealed.

F. L. Soper, for appellant.

C. H. Winsor and A. B. Kittredge, filed brief for appellee.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

THAYER, District Judge, delivered the opinion of the court.

The appellant filed a suit in the circuit court for Lake county, S. D., which was subsequently removed to the United States circuit court for that state, to cancel a deed for a quarter section of land situated in Lake county, S. D., which the appellant, John Gregor, had conveyed to the appellee, S. Y. Hyde, on the 6th day of July, 1889.   The suit to cancel the conveyance was begun in the month of March, 1892.   In his complaint the appellant charged that he was induced to execute the deed under compulsion of certain threats made by the appellee,—that he would cause the arrest and imprisonment of the complainant's son, Alexander M. Gregor, on the charge of embezzlement, if the deed was not executed.   The bill was dismissed by the circuit court on final hearing, and the complainant has brought the case to this court by appeal.

The facts disclosed by the record, as we find them, are these: For some three years prior to 1889, Alexander M. Gregor, the son, had had charge of an elevator belonging to the firm of Hodges & Hyde, at Wells, in the state of Minnesota, and had been engaged at that place in the purchase and sale of grain, live stock, and coal for and in behalf of the firm of Hodges & Hyde, whose chief place of business and residence was at La Crosse, Wis.   In the transaction of such business the complainant's son had appropriated to his own use, and had spent, funds of the firm of Hodges & Hyde, to an amount exceeding $3,000, and had done so under circumstances which undoubtedly rendered him amenable to prosecution for the crime of embezzlement.   The son had fled from Wells shortly prior to July 1, 1889, leaving his wife and family there; but he had

returned home before the execution of the deed in controversy, and he appears to have been present when the deed was executed by his father. No warrant for his arrest had then been sued out, and no warrant for his arrest was afterwards obtained, or attempted to be obtained. Hearing of his son's defalcation, the father came from Madison, S. D., to Wells, Minn., on or about the 6th day of July, 1889, and at the latter place had an interview with the appellee, S. Y. Hyde, who was one of the members of the firm of Hodges & Hyde, which resulted in his executing the conveyance for the tract of land aforesaid, to which the present controversy relates. Contemporaneously with the execution and delivery of the deed by the complainant, Hodges & Hyde executed and delivered an acquittance in favor of Alexander M. Gregor, the son, in which they acknowledged to have received from him "the sum of sixteen hundred dollars, in full settlement of all claims and demands of every name and nature whatsoever, without any reservation." The land conveyed to Hyde appears to have been worth at that time about the sum stated in the above-mentioned receipt. The deed thereto was recorded in Lake county, S. D., on the 9th day of July, 1889; and there the matter rested until this suit was begun, nearly three years thereafter, in the month of March, 1892.

The view that we have been compelled to take of the questions discussed by counsel does not require us to decide whether, in point of fact, the appellant was constrained to make the deed by threats that his son would be prosecuted criminally for the crime of embezzlement if the deed was not executed. It is sufficient to say with respect to that issue that, if it was necessary to determine it, there is some evidence in the records which tends strongly to show that he was not so induced to make the deed solely through fear, induced by threats, that if it was not made his son would be arrested and tried upon a criminal charge. The appellant appears to have known Mr. Hyde, of the firm of Hodges & Hyde, long and intimately (for at least 30 years, according to his own statement); and, in a letter written by him to his son's wife some days before any threats of an arrest could have been made, he expressed, in the strongest terms, his intention to do all in his power to make good to Hodges & Hyde, "to the last cent," the amount of his son's defalcation. Under these circumstances, we consider it not improbable that, in executing the deed, he did precisely what he had fully resolved to do before he had met Mr. Hyde, and before any prosecution could have been threatened. Many a father has sacrificed a considerable portion of his own means to pay his son's debts, and save his credit and business reputation, even when the debts so paid were contracted in such manner that they would not furnish the slightest excuse for a criminal prosecution. It does not seem to us improbable that the appellant was actuated by equally honorable motives in endeavoring to cancel his son's liabilities, if we view the transaction in the light of the sentiments which he expressed in the letter written to his daughter-in-law.

But it is unnecessary to pursue this line of thought further. It is more important to inquire and determine whether the threats com-

plained of by the appellant constituted such duress as will serve to invalidate a deed or other contract, under the laws of the state of South Dakota. In that state the legislature has made considerable progress in the direction of codifying the common law. Among other things, it has declared (vide section 3504, Comp. Laws Dak.) that:

"Duress consists in: (1) Unlawful confinement of the person of the party or of husband or wife of such party, or of an ancestor, descendant or adopted child of such party husband or wife; (2) unlawful detention of the property of any such person; or (3) confinement of such person, lawful in form, but fraudulently obtained, or fraudulently made, unjustly harassing or oppressive."

It has also declared (vide section 3505) that:

"Menace consists in a threat (1) of such duress as is specified in the first and third subdivisions of the last section; (2) of unlawful and violent injury to the person or property of any such person as is specified in the last section; or (3) of injury to the character of any such person."

It is further declared, by section 3502, that:

"An apparent consent is not real or free when obtained (1) by duress; (2) by menace; (3) by fraud; (4) by undue influence; or (5) by mistake."

And, by section 3589, it is declared that:

"A party to a contract may rescind the same in the following cases only: (1) If the consent of the party rescinding or of any party jointly contracting with him was given by mistake or obtained through duress and menace, fraud or undue influence, exercised by or with the connivance of the party * * * or of any other party to the contract jointly interested with such party. * * *"

It is obvious, we think, from these several statutory provisions, that, in the state of South Dakota, a threat to cause the arrest and imprisonment of a person on a criminal charge does not amount to such menace as will serve to invalidate a deed, although it is executed under the pressure of such threat, unless it is a threat to cause the unlawful arrest and confinement of the person, or unless it is a threat to cause his arrest and confinement, which is made for some fraudulent or unlawful purpose, by one who knows that there is no adequate cause for a criminal prosecution. The law with respect to duress, as thus declared by statute in South Dakota, is in conformity with the views which many courts appear to entertain of the true doctrine of the common law. It is held in a number of states that a threat to cause a person's arrest and confinement under process that is to be regularly and lawfully sued out, for adequate cause, is not such duress per minas as will suffice to invalidate a deed or contract that has been executed for a sufficient consideration. It has frequently been ruled that a threat of a lawful arrest is not such duress as will avoid a contract, especially if no warrant has at the time been sued out or obtained. It has been held, however, that a threat of an arrest may amount to such duress as will avoid a contract, if it is made with knowledge that no offense has been committed, and for the wrongful purpose of exciting the fears, and overcoming the free will, of him to whom the threat is addressed. Alexander v. Pierce, 10 N. H. 494, 498; Compton v. Bunker Hill Bank, 96 Ill. 301; Hilborn v. Bucknam, 78

Me. 482, 7 Atl. 272; Higgins v. Brown, 78 Me. 473, 5 Atl. 269; Harmon v. Harmon, 61 Me. 227; Davis v. Luster, 64 Mo. 43; Sanford v. Sornborger (Neb.) 41 N. W. 1102; Landa v. Obert, 45 Tex. 539; Eddy v. Herrin, 17 Me. 338; Richardson v. Duncan, 3 N. H. 508. We are not unmindful of the fact that there is a line of authorities which maintain that a threat made to a wife to obtain the arrest of her husband on a criminal charge, or to a parent to obtain the arrest of his child, does constitute such duress as will serve to vitiate a contract, if the threat in fact overcomes the will, and occasions a forced assent, without reference to the question whether it was or was not a threat of a lawful arrest for adequate cause. This has sometimes been termed a species of moral duress. Eadie v. Slimmon, 26 N. Y. 9; Adams v. Bank, 116 N. Y. 606, 23 N. E. 7; Taylor v. Jaques, 106 Mass. 291; Lomerson v. Johnson (N. J. Ch.) 13 Atl. 8, and cases there cited. But in the case at bar it is unnecessary to attempt to reconcile conflicting views on this subject, which are perhaps irreconcilable. We entertain the opinion that, under the statutes of South Dakota, the menace complained of in the case at bar did not constitute such duress as will invalidate the deed. If the threat was made as stated by the complainant, it was a threat of a lawful arrest, for, beyond all question upon the state of facts disclosed by the present record, the complainant's son was justly amenable to a criminal prosecution; and the "menace," so termed, amounted to no more that a threat to have the criminal laws of the state executed, which the appellee, under the circumstances, had an undoubted right to demand. Moreover, we do not discover in this record any circumstances of oppression or fraud, accompanying the alleged threat, which would justify us in holding that the appellee took an undue advantage of the appellant, or that his conduct towards him was either harsh or oppressive. Furthermore, after the deed was executed, and his son's debt had been canceled, the appellant rested content with the transaction for nearly three years, before discovering that he had been imposed upon. Under these circumstances, and for the foregoing reasons, we conclude that the bill was properly dismissed, and the decree of the circuit court is therefore affirmed.